**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DONNA L. BRUBACH, ESTHER CASAUS-
GARCIA, DEBORAH FERRARA-HEH, MAX
C. HERRERA, MICHAEL MATHIS, GERALD
MILLION, MICHAEL MORENO,YOLANDA
MORENO, TED PAEZ, WILLIAM ROGERS,
WALTER M. SMALL, VELMA TAPIA-CHAVEZ,
RICK WALKER, and THELMA WEST, on behalf
of themselves and all others similarly situated,

          Plaintiffs,

v.                                           Civ. No. 10-CV-1113 MV/ACT

CITY OF ALBUQUERQUE,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

     **THIS MATTER** comes before the Court on Plaintiffs' Motion for Partial Summary

Judgment [Doc. 63], Defendant's Motion for Summary Judgment and Memorandum in Support

Thereof [Doc. 64], and Plaintiffs' Motion for Partial Summary Judgment [Doc. 67] containing

corrected exhibits.   The Court, having considered the motions, memoranda, and relevant law, and

being otherwise fully informed, finds that Plaintiff's Motion for Partial Summary Judgment [Doc.

63] is denied as moot, Defendant's Motion for Summary Judgment [Doc. 64] is well taken in part

will be granted in part, and Plaintiffs' Motion for Partial Summary Judgment [Doc. 67] is well

taken in part and will be granted in part.

**BACKGROUND**[1]

     The Defendant City of Albuquerque ("Defendant" or "City") is a municipal corporation,

operating under the laws of the State of New Mexico, and is an employer within the meaning of the

---

[1]  Except where otherwise noted, the following facts are undisputed.

Fair Labor Standards Act of 1938, as amended by Title 29 U.S.C. Section 201 *et seq.* ("FLSA").

Plaintiffs and approximately 120 other proposed class members are former and current security

guards employed by the City.   Plaintiffs were or are classified by the City as non-exempt

employees under the FLSA and were or are paid an hourly wage of no less than $12.00.

Plaintiffs' duties include maintaining custody and control of City property, patrolling designated

areas of City property, and ensuring the safety and security of City property.

Plaintiffs bring suit to recover back pay and compensatory, exemplary, and punitive

damages as a result of the City's alleged failure to pay employees for all hours worked and for the

City's alleged failure to pay overtime wages as required by the FLSA.   Plaintiffs also allege that

they were not paid all wages due to them on their regular paydays in violation of the New Mexico

Minimum Wage Act, New Mexico Statutes Annotated Sections 50-4-1 through 50-4-30.

A Standard Operating Procedure ("SOP") applicable to security officers entitled "Shift

Responsibilities and Duties" states that "[o]fficers should arrive for duty five minutes prior to their

assigned shift to be briefed by officers going off duty."   The SOP was eliminated as of September

1, 2011.   A factual dispute exists with respect to whether Plaintiffs were required to comply with

the SOP.   Specifically, Plaintiffs present evidence (1) that Sergeants were tasked with enforcing

the SOPs, (2) that Security Chief for the City Mark Shepherd was aware that there was an SOP

requiring security officers to arrive five minutes early and that Sergeants were tasked with

enforcing the SOPs, (3) that eight of the Plaintiffs were told by at least seven different Sergeants,

two Lieutenants, and one supervisor that they were required to comply with the SOP and arrive

five minutes early, and (4) that Plaintiff Yolanda Moreno was informed that a Sergeant would

"write her up" if she did not arrive early.   Defendant presents contrary evidence that Security

Chief Shepherd has never instructed security officers to arrive five minutes early and that he

2

personally has not known any of the Sergeants or Lieutenants who supervise the security officers to so instruct the officers.

No security officers were ever disciplined for failing to report five minutes early.   In addition, Sergeants and Lieutenants usually were not present at shift changes.   Prior to Plaintiffs' lawsuit, the City did not monitor its videotapes to document when employees arrived.

Plaintiffs did not always arrive five minutes early to their post.   Plaintiff Michael Moreno testified that he usually arrived five minutes early, but approximately five percent of the time he arrived right at the beginning of his shift.   Plaintiff Ted Paez testified that he has been tardy on occasion.   Plaintiff Yolanda Moreno testified that the only time she would not arrive five minutes early was when she encountered poor weather, an accident, or another similar occurrence. Plaintiff Velma Tapia-Chavez testified that she generally arrived prior to her shift for the five-minute pre-shift period, that she sometimes arrived only three to four minutes before the beginning of her shift, and that on occasion, due to traffic or "life happening," she arrived after the start of her shift.   When working at a different site where she was not relieving an on-duty officer, Tapia-Chavez had to arrive prior to her shift because she was required to retrieve the facility keys from the administrate office and to have two sets of doors unlocked by the start of her shift, a process which took her five to ten minutes.

Certain Plaintiffs were never late and would arrive more than five minutes prior to the start of their shifts.   Plaintiff Rick Walker testified that he was never late and that he arrived 20 minutes early in order to fulfill his obligation to follow the SOP that required him to arrive five minutes early and because it was his personal preference to arrive to work early.   Plaintiff William Rogers testified that he never arrived late and was generally ten to fifteen minutes early because he wanted to make sure he arrived on time even if he encountered car problems.   Plaintiff Max Herrera

3

testified that he arrived ten minutes prior to his shift time, that he was informed by his supervisor that he should arrive five to seven minutes early consistent with the SOP, and that he endeavors to follow his supervisors' orders.   On the occasions when the City would inform him of a change to his assigned post after he already was en route to work, Plaintiff Herrera might not arrive ten minutes early but he nonetheless would arrive "prior to the start of the shift."

The amount of time the actual briefing took varied based upon the activity occurring during the prior shift.   Plaintiff Rogers testified that sometimes briefing took as little as two to three minutes.   Plaintiff Paez testified that sometimes there was "very little information being exchanged" during the briefing period.   Plaintiff Yolanda Moreno testified that she sometimes would have social conversations during the briefing period.

Security Chief Shepherd testified that "[o]fficers, if they arrive early, do so to relieve the on duty security officer who then leaves (often prior to the end of the shift) but is paid to the end of the shift. . . .   Officers who arrive early are often relieved early themselves and thus leave before the end of the shift but are paid to the end of the shift."     As an example, Chief Shepherd testified that Lieutenant Fred Mollerud reported that Plaintiff Walker often leaves his duty post up to twenty minutes before the end of shift once Walker has been relieved.

The SOPs specifically state that security officers must comply with SOP provisions. Plaintiff Brubach, however, testified that "there are things in the SOP that are antiquated and no longer followed."   For example, the same SOP that indicates that security officers should arrive five minutes early also requires that all time be reported.   Plaintiffs, however, generally did not record the five-minute time period prior to their shift time.   Plaintiff Walker testified that he specifically was told by Sergeant Gerlene Sams that he should only record his shift time and that he should not record the five minutes.   Plaintiff Tapia-Chavez testified that she did not record the

pre-shift time because "[w]e were never informed it, and it was just—it was just policy and the SOP that they gave us when we started, to be early, and we were never to be compensated for it as far as that was the understanding."   Plaintiff Thelma West testified that when she asked about recording the five minutes, noting that it amounted to 50 minutes of overtime per pay period, Sergeant Cooney informed her she was at work only to be briefed and that she would be paid only for her shift time.   Plaintiff Donna Brubach testified that she had been told that she would not be paid for the extra five minutes, so she did not write it down.

Defendant did not pay Plaintiffs for arriving five minutes prior to the start of their shift time.   Although Defendant maintains no security officer has asked to be paid for arriving five minutes early or complained under the union grievance procedure or otherwise about not being paid for arriving prior to shift time, Plaintiff Michael Moreno testified that he told his Sergeant, "Well, you are requiring . . . that we come in five minutes earlier.   Do you understand you are supposed to be paying us for this?"   Likewise, Plaintiff West testified that she told her Sergeant that the unrecorded time amounted to 50 minutes of unpaid overtime per pay period.

Although City security guards generally are paid for one, 30-minute meal period per shift, the meal periods are not consistently provided.   Plaintiff Tapia-Chavez testified that while she generally takes a lunch break between three and four times a week, on busy weeks she is not able to take a break at all.   Plaintiff Michael Moreno testified that he was interrupted on his lunch break "quite a few times," but that there were times when he was not interrupted.   Plaintiff Walker, the union President, testified that his meal periods were interrupted less than once a week.

Plaintiffs testified that they often take their meal breaks in the office.   Plaintiff Walker testified that at one facility security officers "[u]sually . . . would eat in the office . . . at the desk," and that at another they would "eat in the security office where the monitors are."   Plaintiffs

Walter Small and Max Herrera testified that they took their lunch in the office.   Plaintiffs also took their lunch breaks elsewhere.   For example, Plaintiff Ted Paez testified that if alone, he took his lunch in the office, but that when he was with another officer, they would eat in a break room. Plaintiff Michael Moreno also testified that he takes his lunch in one of the break rooms.   Plaintiff West testified that where she ate varied, that she had taken her meals in the break room, monitor room, and in a Sergeant's office, and that she did not want to eat her lunch sitting outside because she had "seen the transients urinate on [the benches]."   Plaintiff Donna Brubach testified that at some locations she took her meal break in the office, but that at other locations she ate in the office or break room.

### STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."   *Celotex*

*v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   The fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts.   *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). Cross-motions for summary judgments, however, do authorize a court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.   *See Harrison W. Corp. v. Gulf Oil co.*, 662 F.2d 690, 692 (10th Cir. 1982) (citations omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."   *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.   *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

**DISCUSSION**

The parties have filed cross-motions for summary judgment[2] seeking the Court's ruling as a matter of law on the following five questions.   First, with respect to the FLSA, the parties ask the Court to determine as a matter of law whether the City "employed" Plaintiffs for compensable "work" with respect to the five-minute period prior to the start of their shifts, thus rendering the time includable towards the FLSA's forty-hour per week overtime threshold.   Second, the parties ask the Court to determine as a matter of law whether Defendant is entitled to an FLSA offset for paid meal periods.   Third, the parties seek summary judgment in their favor on the question whether the five-minute time period is *de minimis* and therefore excludable from the FLSA's forty-hour overtime threshold.   Fourth, the parties ask the Court to rule as a matter of law whether a three-year statute of limitations applies and whether Plaintiffs are entitled to liquidated damages.   Fifth, with respect to Plaintiffs' claims under the New Mexico Minimum Wage Act, the parties ask the Court to determine as a matter of law whether Plaintiffs are entitled to overtime wages.

I.      Fair Labor Standards Act

     A.      Compensability of the Five-Minute Pre-Shift Briefing Period

          1.      "Employed" Within the Meaning of Section 207(a)

The parties ask the Court to determine as a matter of law whether the City "employed" Plaintiffs for the five-minute period prior to the start of their shifts, thus rendering this time includable towards the FLSA's statutory 40-hour overtime threshold.   Plaintiffs contend that

---

[2]   Plaintiffs' original Motion for Partial Summary Judgment [Doc. 63] was filed on December 30, 2011, but contained several mis-labeled and/or upside down exhibits.   *See* Pls' Mot. for Summ. J. [Doc. 63], p.1 n.1.   On January 9, 2012, Plaintiffs filed a second Motion for Partial Summary Judgment [Doc. 67], which was identical to the original motion except that it contained corrected exhibits.   *See id.*   Because Plaintiffs' subsequent filing is substantively identical, the Court denies Plaintiffs' original motion as moot.

because they uniformly followed and Defendant uniformly enforced the SOP requiring Plaintiffs to arrive five minutes prior to the start of their shift time, Defendant is liable to Plaintiffs for unpaid back wages at the rate of one and one-half times their regular hourly rate for this five-minute period. Defendant disagrees, arguing that Plaintiffs were not "employed" and that Defendant therefore is not liable for any overtime back wages.

Section 207(a) of the FLSA provides in pertinent part, "Except as otherwise provided in this section, no employer shall employ any employee . . . for a work week longer than 40 hours unless such employee receives compensation for [t]his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Thus, under the FLSA, a plaintiff must demonstrate that he was "employed" in order to prove a violation. *See Whitaker v. Pacific Enters. Oil Co.*, No. 91-5092, 1992 WL 44729, at *1 (10th Cir. Mar. 9, 1982) (citing 29 U.S.C. § 207(a)(1)). The FLSA provides that "employ" includes "to suffer or permit to work." 29 U.S.C. § 203(g); *accord* 29 C.F.R. § 785.6. In an action for unpaid overtime wages in violation of the FLSA, the burden of proof generally is upon the plaintiff-employee to establish by a preponderance of the evidence the number of hours of overtime worked each week and the amount of wages due each pay period. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Tripodi v. Microculture, Inc.*, 397 F. Supp. 2d 1308, 1314 (D. Utah 2005). Where an employer's payroll records are unreliable, a worker has met his or her burden of proof if the worker has proven that he or she has in fact performed improperly compensated work and if the worker produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See Sedano v. Mercado*, No. CIV-92-0052-HB, 1992 WL 454007, at *3 (D.N.M. Oct. 8, 1992) (citing *Anderson*, 328 U.S. at 686-88).

A plaintiff may satisfy his or her burden of proof necessary to establish an FLSA violation

9

in one of two ways.   First, a plaintiff may show that the hours worked "were required by the terms of his [or her] employment."   *Summerfield v. Photo-Electronics, Inc.*, 26 Wage & Hour Cas. (BNA) 608, 612 (E.D. Pa. 1983) (citation omitted).[3]   Second, a plaintiff may show that the employer "'suffered or permitted [the plaintiff] to work,'" even if the employer did not require the work.   29 C.F.R. § 785.11 ("[w]ork not requested but suffered or permitted is [also] work time").[4] In addition, a plaintiff must establish that the employer had actual or constructive knowledge that the employee was engaging in overtime work.   *See, e.g.*, *Whitaker*, 1992 WL 44729, at *1 ("courts have uniformly held that a plaintiff must show, as an element of his case, that his employer knew or should have known of his overtime work") (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276-77 (4th Cir. 1986); *Forrester v. Roth's IGA Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)) (additional citations omitted).

Plaintiffs argue that the written City policy contained in the SOP required Plaintiffs to arrive five minutes prior to their shift start time and that this five-minute period constituted employment by the City within the meaning of the FLSA.   A mandatory pre-shift, unpaid briefing

---

[3]   *See also Anderson*, 328 U.S. at 690-91 (the workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty, or at a prescribed work place"); *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (employees subject to the FLSA must be paid for all time "controlled or required by the employer"); *Lamon v. City of Shawnee*, 972 F.2d 1145, 1158-59 (10th Cir. 1992) ("'[c]ompensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace'") (quoting 29 C.F.R. § 553.221(b)), *cert. denied*, 507 U.S. 972 (1993); 29 C.F.R. § 785.7 (all hours are hours worked for purposes of the FLSA if the employee is required to give those hours to his employer) (citations omitted).

[4]   *See also Lamon*, 972 F.2d at 1158 ("'[c]ompensable hours of work generally include all of the time during which an employee is on duty . . . . *as well as* all other time during which the employee is suffered or permitted to work for the employer'") (quoting 29 C.F.R. § 553.221(b)) (emphasis added); *Lindow v. United States*, 738 F.2d 1057, 1060 (9th Cir. 1984) ("[a]n employer must pay overtime when he 'suffers' or 'permits' an employee to work in excess of 40 hours," even if the employer did not require the work).

period, absent an offset or other defense, may constitute the basis for an FLSA overtime violation provided the briefing periods exceed the FLSA's weekly overtime threshold.  *See Robertson v. Bd. of County Commr's*, 78 F. Supp. 2d 1142, 1155 (D. Colo. 1999) (plaintiffs who worked a fifteen-minute mandatory pre-shift briefing period may be entitled to overtime compensation).

Defendant contends, however, that the SOP was not mandatory but rather was permissive because it provided only that officers "should" arrive for duty five minutes prior to their assigned shift.   The Court notes, however, that even if the language of the SOP is in the form of a recommendation, pressure or encouragement to work may support an FLSA violation.  *See Lindow v. United States*, 728 F.2d 1057, 1061 (9th Cir. 1984) (considering whether the employer "pressure[d] or even encourage[d] the employees to report early to work" in evaluating whether plaintiffs were "suffered or permitted" to work).   Furthermore, the Court notes that the SOP alone is not determinative.   Plaintiffs have identified sufficient additional evidence demonstrating that a question of fact exists as to whether Plaintiffs were required to arrive to work five minutes prior to the start of their shift.   Most persuasive is the testimony of eight named Plaintiffs indicating that they were told by at least seven different Sergeants, two Lieutenants, and one supervisor that they were required to arrive to work five minutes prior to the start of their shift time for briefing.   Also compelling is the testimony of Plaintiff Yolanda Moreno indicating that a Sergeant informed her he would "write her up" if she did not arrive five minutes early.

In support of its motion, Defendant maintains that that SOP regarding the five-minute pre-shift briefing period was never enforced and that security officers were not actually required to arrive early.   The only evidence that Defendant cites for these broad propositions is testimony from Security Chief Shepherd stating that Shepherd himself has never instructed security officers to arrive five minutes early and that Shepherd personally has not known of a Sergeant or

11

Lieutenant who has instructed officers to arrive five minutes early.   Defendant's evidence, however, considered in conjunction with Plaintiffs' evidence that at least ten supervisors have enforced the SOP and required Plaintiffs to arrive early, confirms the existence of a factual dispute.

A factual dispute likewise exists with respect to whether Defendant had actual or constructive knowledge that Plaintiffs were arriving early or engaging in pre-shift compensable work.   *Cf. Whitaker*, 1992 WL 44729, at *1 (a plaintiff must show that the employer knew or should have known of the plaintiff's overtime work).   Defendant argues that it had no such knowledge, pointing to evidence that Plaintiffs failed to record their pre-shift arrival time, that no security officer has ever asked to be paid for the five-minute time period or complained of not being paid for this time, that Sergeants were not generally present for shift changes, and that the City did not monitor any video tapes to observe security officers arriving early.   In contrast, however, Plaintiffs' evidence establishes that ten different supervisors specifically instructed Plaintiffs to arrive five minutes early and that one supervisor threatened to discipline a Plaintiff if she did not arrive early.   Plaintiffs also present evidence that at least one security officer complained about not being paid.   To meet the actual or constructive knowledge standard, the Court need only inquire whether the employer had the "opportunity through reasonable diligence to acquire knowledge."   *Reich v. U.S. Dep't of Conservation & Natural* Resources, 28 F.3d 1076, 1082 (11th Cir. 1994) (internal quotation marks and citations omitted).   Just as Plaintiffs' evidence was sufficient to create a factual dispute with respect to whether Defendant required Plaintiffs to arrive early, it is also is sufficient to create a factual dispute with respect to whether Defendant, through its supervisors, had actual or constructive knowledge that Plaintiffs were complying with their supervisors' instructions to arrive five minutes early.   *Cf. McMillin v. Foodbrands Supply Chain Servs., Inc.*, 272 F. Supp. 2d 1211, 1217 (D. Kan. 2003) (plaintiff's

evidence at least two of her supervisors knew that she was working overtime and was not receiving compensation for the work was sufficient to create a genuine issue of material fact with respect to whether her employer had actual or constructive knowledge of the overtime).

The Court concludes that the foregoing factual disputes prevent the Court from determining as a matter of law whether Plaintiffs were "employed" by Defendant within the meaning of Section 207(a) of the FLSA during the five-minute pre-shift briefing period.   The Court therefore denies the parties' cross-motions for summary judgment to the extent they seek a ruling as a matter of law on this question.

To the extent that Defendant seeks a more limited ruling, asking the Court to grant summary judgment on the question whether Defendant is liable for any overtime after September 1, 2011, when the SOP recommending a five-minute early arrival was eliminated, the Court grants Defendant's motion.   Once Defendant satisfied its initial summary judgment burden of demonstrating an absence of a genuine issue of material fact on the question whether Plaintiffs were required to arrive five minutes early after September 1, 2011, *see Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted), Plaintiffs were required to satisfy their burden of "go[ing] beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designat[ing] 'specific facts showing that there is a genuine issue for trial.'"   *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).   Plaintiffs have failed to present any evidence that Defendant required Plaintiffs to arrive five minutes prior to the start of their shifts after September 1, 2011. When ruling on cross-motions for summary judgment, the Court may assume that there is no evidence which needs to be considered other than that which has been filed by the parties.   *See Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1982) (citations omitted).

13

Accordingly, the Court therefore concludes as a matter of law that Defendant is not liable under the FLSA for overtime back wages due to the early reporting requirement after September 1, 2011.

The cases cited by Defendant for the proposition that an employee failing to record overtime is precluded from bringing an overtime claim do not persuade the Court to find in favor of Defendant with respect to Plaintiffs' pre-September 1, 2011, FLSA overtime wage claims. Defendant's cases find no FLSA liability only where an employee fails to record the overtime *and* the employer has no other independent reason for being aware of the overtime.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (holding that failure to record time is fatal to a later claim *if* the company had no reason to be aware of the overtime); *Whitaker*, 1992 WL 44729, at *2 (affirming summary judgment against a plaintiff where the plaintiff failed to record overtime *and* the employer had no independent actual or constructive knowledge that the plaintiff performed the unrecorded overtime work); *Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1326-27 (S.D. Fla. 1999) (holding that the employer had no actual or constructive knowledge of the overtime where the employee failed to record overtime on his time sheets *and* the employer had no other independent knowledge of the overtime); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (finding no violation where the employee failed to record his overtime knowing he would have been paid if he had recorded it *and* the employer had no independent knowledge of the overtime).

Here, in contrast, although Plaintiffs did not record their overtime, there is ample evidence that Defendant had independent actual and constructive knowledge of the unrecorded overtime. Specifically, eight of the Plaintiffs testified that at least seven different Sergeants, two Lieutenants, and one supervisor instructed Plaintiffs to arrive five minutes early and that at least one Sergeant threatened to discipline a Plaintiff if she failed to arrive early.   Defendant further was aware that it

14

had a written policy in the form of an SOP recommending that security officers arrive five minutes

prior to their shifts for debriefing, which in conjunction with Plaintiffs' other evidence, could lead

a reasonable jury to conclude that Defendant had constructive notice that security officers may

have been arriving early.   The Court already has concluded that this evidence of Plaintiffs' is

sufficient to establish a factual dispute regarding knowledge, and the fact that Plaintiffs may have

failed to record their overtime does not alter the Court's conclusion.   Furthermore, Plaintiffs Rick

Walker, Thelma West, and Donna Brubach testified that they did not record the time because their

supervisors specifically instructed them not to record the time and informed them they would not

be paid for the time.   The Tenth Circuit has held that evidence that a supervisor instructed a

plaintiff not to report actual overtime work would "obviously" substantiate a violation of the

FLSA.  *See Whitaker*, 1992 WL 44729, at *2.   Accordingly, Plaintiffs' failure to record their

overtime is not fatal to their claim.

### 2.     Compensable "Work" Within the Meaning of the FLSA

Defendant argues that even if Plaintiffs actually arrived five minutes early, the time was

not compensable "work" within the meaning of the FLSA because briefing sometimes involved

personal discussion.   The FLSA does not specifically define "work," so courts must determine on

a case-by-case basis whether an employee's activities are compensable under the FLSA.  *See*

*Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (citations omitted); 29

C.F.R. § 785.6.   Although the Supreme Court originally defined "work" as "physical or mental

exertion . . . controlled or required by the employer and pursued necessarily and primarily for the

benefit of the employer and his business," *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*,

321 U.S. 590, 598 (1944), the Court subsequently has held that "work" need not require physical

or mental exertion, *see Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (providing that

exertion is not the *sine qua non* of work because "an employer . . . may hire a man to do nothing, or to do nothing but wait for something to happen"); *see also* 29 C.F.R. § 785.7 (same) (citations omitted).   Congress has provided, however, that certain "preliminary or postliminary" activities will be uncompensated under the FLSA.   *See* 29 U.S.C. § 254(a) (defining, for example, time spent commuting between home and work as noncompensable).   Preliminary and postliminary activities fall within the protection of the FLSA only "if they are an integral and indispensable part of the principal activities" of the employer.   *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956); *see also Robertson v. Bd. of County Commr's*, 78 F. Supp. 2d 1142, 1155 (D. Colo. 1999) ("[c]ompensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace[,] includ[ing] all pre-shift and post-shift activities, which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity") (citing 29 C.F.R. § 553.221(b)).   The Department of Labor has explained that an activity is "an integral part of a principal activity" if it is a "closely related" activity that is "indispensable to its performance."[5]   29 C.F.R. § 790.8(c).

In support of its argument that the five-minute briefing period was not compensable, Defendant points to evidence that Plaintiff Yolanda Moreno "sometimes" would have social conversations during the briefing period, and that Plaintiff Paez at "times" would exchange "very little information" during the briefing period.   That same evidence, however, also shows that at

---

[5]   Although agency interpretive regulations are generally not binding on courts, *see Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977), such interpretations are entitled to judicial deference, *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 335 (D. Ill. 2000).   Indeed, the Tenth Circuit has explicitly recognized that the "administrative regulations adopted pursuant to FLSA 'are entitled to great weight and should not lightly be set aside.' . . .   FLSA regulations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'"   *Lamon v. City of Shawnee*, 972 F.2d 1145, 1152 n.7 (10th Cir. 1992) (citations and internal quotations omitted), *cert. denied*, 507 U.S. 972 (1993).

times no social conversations occurred and more than very little information was exchanged.   In addition, Plaintiff Tapia-Chavez testified that she had to arrive prior to her shift because she was required to retrieve keys from the administrate office and have two sets of doors unlocked by the start of her shift time, a process which took her five to ten minutes to complete.   As such, a factual dispute clearly exists with respect to whether the pre-shift briefing took a full five minutes.

Even construing the facts in Defendant's favor, however, at best Defendant has shown that the briefing period sometimes involved personal discussion that it at times took less than the full five minutes.   The Court notes, however, that all of the Plaintiffs except Walter Small and Ted Paez testified that they specifically were told by their supervisors that they were required to arrive five minutes early.   The Supreme Court has held that the time that an employer specifically requires an employee to work may be included in calculating the FLSA overtime threshold of hours worked even if no physical or mental exertion is required, *see Armour*, 323 U.S. at 133, and that activities will constitute "work" if they are an "integral part of a principal activity," *Steiner*, 350 U.S. at 254; *see also* 29 C.F.R. § 790.8(c) (activities are an "integral part of a principal activity" if they are "closely related" and "indispensable to its performance").   Furthermore, "compensable hours of work generally include all of the time during which an employer is *on duty* on the employer's premises or at a prescribed workplace."   29 C.F.R. § 553.221(b) (emphasis added).   The Court concludes that a required in-person debriefing of a security officer beginning duty by the officer whose shift is ending constitutes time during which an employee is "on duty," 29 C.F.R. § 553.221(b), and that this briefing is an integral part of and indispensable to the officers' principal activities, *see Steiner*, 350 U.S. at 254, of maintaining custody and control of, patrolling designated areas of, and ensuring the security of City property.   The mandatory briefing period therefore constitutes "work" even if the actual briefing took less than five minutes.   *Cf.*

17

*Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 518 (E.D. Tex. 2005) (holding that a "mandat[ory] person-to-person shift relief . . . is arguably compensable work time under the FLSA" despite the fact that the actual time the pre-shift briefings took "var[ied] according to the personal habits and practices of the person making relief" and the fact that some of the time "was spent socializing with other employees").

The Court is not persuaded otherwise by Defendant's additional argument that because some Plaintiffs arrived as early as twenty minutes prior to the shift time for their own personal convenience, Plaintiffs "cannot logically argue that they are owed money [due to] the City's five-minute rule, when that is not the reason they arrived early."   First, a factual dispute exists with respect to whether Plaintiffs arrived early *only* because it was their personal preference. Plaintiffs have presented evidence that those who arrived in advance of the five-minute pre-shift briefing period typically did so both because of personal preference *and* because they wanted time to spare to ensure that they complied with the early arrival requirement.   Moreover, there is no evidence that any Plaintiff arrived five minutes prior to the shift time simply because of personal preference rather than compliance with the five-minute rule.   Second, an employee's preference to arrive early, for example at 8:45 a.m., cannot transform a 9:00 a.m. start time (or even an 8:55 a.m. pre-shift start time) into a later start time, simply because the employee was arriving early due to his or her personal preference.   For if it could, such a rule would counterproductively discourage employees from arriving to work early and planning for unanticipated delays.

Admittedly, there is a line of cases that hold that an employee's pre-shift activities may not constitute compensable "work" within the meaning of the FLSA if the employee "'freely chooses to put in additional time as a matter of personal preference or convenience.'"   *Lamon v. City of Shawnee*, 972 F.2d 1145, 1158 (10th Cir. 1992) (quoting *Lindow v. United States*, 738 F.2d 1057,

18

1061 (9th Cir. 1984)), *cert. denied*, 507 U.S. 972 (1993).   These cases, however, do not persuade the Court to grant summary judgment in Defendant's favor because they are inapplicable where, as here, the employer actually *requires* the at-issue hours to be worked.   In *Lamon v. City of Shawnee*, the Tenth Circuit upheld a jury's finding that law enforcement supervisors were not engaged in compensable work under the FLSA when they arrived early to prepare for their pre-shift briefings of the law enforcement officers they supervised.   *See* 972 F.2d at 1158-59. The *Lamon* plaintiffs argued that although the City of Shawnee had compensated them for the fifteen minute pre-shift briefing itself, the City also should have compensated them for the fifteen to thirty minutes they arrived *prior* to the pre-shift briefing in order to prepare for the briefing. *See id*. at 1158.   The Tenth Circuit, in upholding the jury's verdict against the supervisors, reasoned that the jury could have found that the supervisory plaintiffs' activities in preparing for the pre-shift briefing "were not properly characterized as work."   *Id.* at 1159 (citations omitted).

The facts of *Lamon*, however, are distinguishable from those of the case at bar.   In *Lamon*, the supervisory plaintiffs were seeking compensation under the FLSA not for the mandatory pre-shift briefing itself (for which the City of Shawnee had paid the plaintiffs), but rather for the time they had spent preparing for the pre-shift briefing.   *See id.* at 1158.   In addition, the City did not require the supervisory plaintiffs to arrive fifteen to thirty minutes prior to the pre-shift briefings to prepare for the briefings.   *See id.*   The question at issue in *Lamon* was whether the City had *suffered or permitted* the plaintiffs to work even though the City had not *required* the plaintiffs to work.   *See id.* at 1158-59.   The *Lamon* court concluded that the jury properly could have determined that the supervisory plaintiffs were present at work voluntarily and that the plaintiffs did not conduct any compensable work.   *Id.* at 1159.   Other courts similarly have held that liability under the FLSA will not attach where an employer does not require a plaintiff to

19

arrive early, but where the plaintiff nonetheless voluntary arrives before his or her shift to perform work.   *See, e.g.*, *Lindow*, 728 F.2d at 1061 (plaintiffs who performed otherwise compensable work before the beginning of their shift for their own convenience, and who could have instead performed the work during regular hours, were not entitled to compensation where the employer "did not pressure or even encourage the employees to report early to work"); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 50 (8th Cir. 1984) (the "only activities excluded from FLSA coverage are those undertaken [for the employee's] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer"), *cert. denied*, 471 U.S. 1054 (1985); *Levias v. Pac. Maritime Ass'n*, 760 F. Supp. 2d 1036, 1058, 1061 (W.D. Wash. 2001) (any pre-shift time worked was not compensable because plaintiffs were not required to arrive early but rather chose to do so to select equipment available on a first-come, first-served basis, and because plaintiffs chose to conduct their safety checks prior to their shifts "for their own convenience rather than for the company's benefit").

Here, in contrast, Plaintiffs have presented evidence that Defendant actually required Plaintiffs to arrive five minutes early for pre-shift briefing, that Defendant enforced as mandatory its SOP recommending that security officers arrive five minutes early, and that although some Plaintiffs may have arrived early in part because of personal preference, Plaintiffs generally arrived early because they wanted to comply with the five-minute early arrival mandate from their supervisors.   Moreover, courts have determined that an employee's subjective reasons for arriving early simply do not matter for purposes of determining whether pre-shift activities constitute "work."   *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); *see also Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 n.11 (5th Cir. 1976) ("fact that the employees too may have benefitted . . . is not inconsistent with the conclusion that the work was an integral and

indispensable function of the defendant business") (citation omitted).   In addition, courts specifically have concluded that mandatory pre-shift briefings may be compensable under the FLSA.   *See Robertson*, 78 F. Supp. 2d at 1155-56 (holding that plaintiffs establishing that their employer failed to pay them for a mandatory, fifteen-minute pre-shift briefing may be entitled to overtime compensation under the FLSA, but declining to grant plaintiffs summary judgment because they failed to submit documentation of their individual entitlement to compensatory time); *Barrentine*, 750 F.2d at 50 (the "only activities excluded from FLSA coverage are those undertaken [for the employee's] own convenience, not being required by the employer").   Courts also have recognized that where an employer "pressures" or "encourages" an employee to arrive early—which arguably is analogous to maintaining an SOP recommending that security officers arrive early—FLSA liability may also attach.   *See, e.g.*, *Lindow*, 738 F.2d at 1061.

The Court already has concluded that a factual question exists with respect to whether Plaintiffs were required to arrive five-minutes early, which precludes a finding of summary judgment in Defendant's favor.   Even though a mandatory five-minute briefing period may constitute compensable work within the meaning of the FLSA, however, because a factual dispute exists with respect to whether the pre-shift briefing period was in fact mandatory, the Court must deny the cross-motions for summary judgment.

### 3.   Additional Arguments of Defendant

Defendant sets forth several additional arguments that do not persuade the Court to grant summary judgment in its favor.   Defendant maintains that even if Plaintiffs arrived early, they have not incurred overtime because Plaintiffs often leave early although they are paid until the end of their shifts.   In support of this claim, Defendant points only to the testimony of Security Chief Shepherd, stating that "[o]fficers who arrive early are often relieved early themselves and thus

leave before the end of the shift but are paid to the end of the shift."   Chief Shepherd testified that

Lieutenant Fred Mollerud reported that Plaintiff Rick Walker often leaves his duty post up to

twenty minutes before the end of shift once he has been relieved.   Plaintiffs argue that Shepherd's

statements are inadmissible because he lacks personal knowledge of the facts to which he attests

and because Shepherd's statements are hearsay.   However, without deciding whether Chief

Shepherd's statements are admissible, the Court notes that even if Defendant produced admissible

evidence that Plaintiffs sometimes left early, that evidence would not indicate that Plaintiffs

always left early such that no overtime was ever worked.   Accordingly, the Court concludes that a

factual dispute exists with respect to whether Plaintiffs who arrived early failed to incur overtime

because they also left early, and that this dispute precludes summary judgment.

Defendant also makes two additional, counter-intuitive arguments that seemingly

encourage City employees to break the rules and punish those who seek to comply.   Defendant

argues, for example, that no security officer was ever disciplined for failing to comply with the

SOP requiring a five-minute early arrival despite the fact that some Plaintiffs testified that they do

not always arrive five minutes early.   This argument tends to encourage employees to disregard

recommendations in an employer's written policy and (more egregiously) to disobey direct

instructions of their supervisors when there is no punishment meted out for failure to comply.

The Court is not persuaded that a lack of discipline for an employee's failure to comply with a

supervisor's mandate is persuasive evidence that the mandate did not exist or that the employee

should have disregarded it.

Defendant also argues that Plaintiffs themselves failed to comply with all portions of the

SOPs.   Specifically, Defendant points out that the SOPs require accurate reporting of all hours

worked, and yet Plaintiffs testified that they intentionally failed to record their pre-shift arrival

22

time because they understood that the City would not pay them for this time.   The Court is not persuaded by Defendant's argument that an employee's failure to comply with all portions of an employer's policies can render the remaining policies unenforceable or otherwise inapplicable.   It is illogical to conclude that an employee's unilateral beliefs or actions in contravention of an employer's policies can render the employer's policies moot or unenforceable.   Defendant's argument also fails to account for the fact that the evidence shows that at least seven different Sergeants, two Lieutenants, and one supervisor informed Plaintiffs that they were required to arrive five minutes prior to the start of their shift time.   Based upon this evidence alone, without even considering the SOP itself, a question of fact precludes summary judgment with respect to whether Plaintiffs were required to arrive five-minutes early.

       B.     <u>Offset Defense for Paid Meal Periods</u>

Defendant asks the Court to grant summary judgment in its favor on the ground that Defendant provided Plaintiffs with paid bona fide meal periods that offset any liability incurred for unpaid work due to Plaintiffs' arrival five minutes prior to the start of their shift time.   Plaintiffs argue that Defendant is not entitled to an offset for a bona fide paid meal period because Defendant failed consistently to provide Plaintiffs with uninterrupted 30-minute breaks.

Courts have recognized the viability of an offset defense where an employer pays its employee for a bona fide meal period, but fails to pay the employee for certain pre-shift or post-shift time.   In *Hawkins v. Securitas Security Services, Inc.*, the court described the nature of an offset defense, explaining that the employer "could contend that the employee's compensated thirty-minute lunch breaks completely offset fifteen minutes of off-the-clock work performed both before and after each shift, thus eliminating liability on that claim."   280 F.R.D. 388, 397 (N.D. Ill. 2001) (citations omitted).

Section 785.19(a) defines "bona fide meal periods" for employees covered by the FLSA:

> Bona fide meal periods are not worktime. . . .   Ordinarily 30
> minutes or more is long enough for a bona fide meal period.   A
> shorter period may be long enough under special conditions.   The
> employee is not relieved if he is required to perform any duties,
> whether active or inactive, while eating.   For example, an office
> employee who is required to eat at his desk or a factory worker who
> is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a).   The Tenth Circuit, consistent with the majority of Circuits, has held that

an employee is "completely relieved from duty" during a meal period, for purposes of Section

785.19(a) when the "employee's time is not spent predominantly for the benefit of the employer."

*Lamon*, 972 F.2d at 1172.   Although *Lamon* itself concerned the compensability of meal periods

under an analogous regulation applicable to law enforcement personnel working shifts of fewer

than 24 hours, *see* 29 C.F.R. § 553.223(b), the Circuit opined in dicta that the "predominant

benefit" standard would also apply to meal periods under Section 785.19.   *See Lamon*, 972 F.2d at

1158 n.18.   The Tenth Circuit since has stated expressly that it perceives no distinction between

the two sections.   *See Beasley v. Hillcrest Med. Ctr.*, Nos. 02-5121, 02-5147, 2003 WL 22317403,

at *2 (10th Cir. Oct. 9, 2003).   If an employee is required to do some amount of work for the

employer during the meal period, but the predominant benefit of the meal period is nonetheless for

the employee, the entire meal period remains noncompensable.   *See Lamon*, 972 F.2d at 1157-58;

*Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992) (although an officer may have

limited responsibilities during a lunch hour, those responsibilities do not necessarily mean the

officer is working) (citation omitted); *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1181-82

(D. Kan. 2011) (the court cannot "carve out" that portion of the meal period in which compensable

work is performed) (citation omitted).   The determination whether a paid meal period is "bona

fide" and therefore noncompensable within the meaning of Section 785.19(a) is "highly

individualized and fact-based."   *Beasley*, 2003 WL 22317403, at *2 (quoting *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000)).

Defendant contends that because the City provided Plaintiffs with 30 minutes of paid, noncompensable time for lunch during each of Plaintiffs' five weekly eight-hour shifts, Plaintiffs never worked more than eight compensable hours in one day.   Therefore, even if the five-minute early arrival was compensable, Plaintiffs never reached the FLSA's 40-hour overtime threshold in one week.   Defendant further contends that presuming Plaintiffs worked five shifts per week, only one bona fide meal period per week would be needed to negate any liability on the part of the City for a five-minute early reporting requirement.

In response, Plaintiffs contend that their meal periods were not "bona fide" within the meaning of Section 785.19(a) because Defendant failed completely to relieve them of their work duties during their meal breaks.   Plaintiffs therefore argue that their meal times were in fact compensable and includable towards the FLSA's 40-hour overtime threshold.   If Plaintiffs are correct, and Plaintiffs did not receive at least one bona fide meal period per week, Defendant would not be entitled to an offset for meal periods.

Admittedly, as Defendant points out, there is evidence in the record that the majority of Plaintiffs took meal breaks at least one day per week.   Plaintiff Tapia-Chavez testified that she generally takes a meal break three to four times per week, and Union President Plaintiff Walker testified that his meal periods were interrupted less than once a week.   There is also evidence before the Court, however, that Plaintiffs were not always able to take a bona fide meal break one day a week.   For example, Plaintiff Tapia-Chavez testified that on busy weeks she was not able to take a meal break at all.   Plaintiffs also present additional evidence that their meal periods were interrupted by Defendant.   Plaintiff Michael Moreno testified (albeit vaguely) that he was

25

interrupted on his lunch break "quite a few times."   Although it is not clear from this testimony that Plaintiff Moreno was interrupted five days in a row or that the interruptions were sufficient to render the meal period for the predominant benefit of the City, *compare Beasley*, 2003 WL 22317403, at *3 (finding that plaintiffs raised a triable issue where they presented evidence that their meal periods were frequently interrupted with things like phone calls, conversations with doctors, the administration of pain medication, new admissions and communicating with patients' families), the Court concludes that Plaintiffs' evidence is nonetheless sufficient to create a genuine factual dispute.

Because Defendant has not set forth undisputed evidence that it consistently provided Plaintiffs with at least one, bona fide 30-minute meal period per week that could offset 25 minutes (five minutes per day for five shifts per week) of arriving to work early for the pre-shift briefing, the Court cannot decide the question of offset as a matter of law.   The Court therefore denies Defendant's Motion for Summary Judgment.   Likewise, because the evidence does not undisputedly show that Plaintiffs never received one, uninterrupted bona fide meal period per day, the Court similarly denies Plaintiffs' Motion for Summary Judgment on the question of offset.

Plaintiff's argument regarding passive duties during meal periods does not persuade the Court to find otherwise.   Section 785.19(a) provides that an employee is not relieved of work "if [s/]he is required to perform any duties, whether active or *inactive*, while eating."   29 C.F.R. § 785.19(a) (emphasis added).   The regulation provides that an example of an inactive duty that constitutes working while eating is an "office employee who is required to eat at his [or her] desk or a factory worker who is required to be at his [or her] machine."   *Id.*   Plaintiffs have presented evidence that they often took their meal breaks in an office or monitor room.   The Court assumes that Plaintiffs draw attention to the location of *where* they ate to support an argument that

26

Defendant charged Plaintiffs with passive duties during their meal breaks.

Although Plaintiffs point to evidence that they often ate in an office or monitor room, they present no evidence that they were required to eat there.   Rather, the undisputed evidence indicates that Plaintiffs chose where to eat their meals based upon their personal preference and that while some Plaintiffs chose to eat in an office many chose to eat in a break room.   Plaintiff Michael Moreno, for example, testified that he ate his lunch in one of the break rooms, and Plaintiff Ted Paez testified that he would eat his lunch in a break room when he was with another security officer and in an office when he was alone.   Plaintiff Thema West testified that she typically took her lunch period in a break or monitor room because she had "seen the transients urinate on [the benches]" and that she did not want to eat outside.   Choosing to eat a meal in an office or a monitor room alone—without an employer requiring the employee to eat in those locations—does not convert a bona fide meal period into working while eating.   *Cf. id.*

C.     *De Minimis* Defense

Defendant argues that the Court should grant summary judgment in Defendant's favor even if Plaintiffs were required to arrive five minutes early because the time spent in the pre-shift briefing period was *de minimis*.   Plaintiffs contend, however, that the FLSA's *de minimis* exception does not apply because the five-minute briefing period was a "fixed or regular" work time excluded from the exception.

In *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court held that otherwise compensable preliminary and postliminary activities are not included in calculating hours worked if the period of time spent on an activity is "insubstantial and insignificant."   *See* 328 U.S. 680, 693 (1946).   "[A] few seconds or minutes of work *beyond the scheduled working hours* . . . may be disregarded.   Split-second absurdities are not justified. . . .   It is only when an employee is

27

required to give up a substantial measure of his time and effort that compensable working time is

involved." *Id.* at 692 (emphasis added); *accord Reich v. Monfort*, 144 F.3d 1329, 1333 (10th Cir.

1988) (citation omitted); 29 C.F.R. § 785.47.   Importantly, Department of Labor regulations also

provide, "An employer may not arbitrarily fail to count as hours worked any part, however small,

of the employee's *fixed or regular* working time or practically ascertainable period of time he is

regularly required to spend on duties assigned to him." *Id.* (citations omitted) (emphasis added).

     Defendant asks the Court to hold as a matter of law that the five-minute pre-shift briefing

period, even if required, was not compensable because the time was *de minimis*.   The Court,

therefore, in deciding only whether the *de minimis* exception applies, will assume that the pre-shift

briefing period was mandatory.   The Supreme Court has specifically held that the *de minimis*

exception excludes from FLSA compensability only insubstantial or insignificant time "beyond

the scheduled working hours." *Anderson*, 328 U.S. at 692-93; 29 C.F.R. § 785.47.   Moreover,

Department of Labor regulations providing guidance with respect to the *de minimis* exception

specifically prohibit an employer from failing to count as hours worked any part, no matter how

small, of the employee's "fixed or regular working time." *Id.*   The Court concludes as a matter

of law that a mandatory five-minute pre-shift briefing period does not constitute time "beyond the

scheduled working hours," and that it indeed constitutes part of an employee's "fixed or regular

working time."   As such, the time is not subject to the *de minimis* exception.   Defendant's

Motion for Summary Judgment on the *de minimis* defense therefore is denied.   To the extent

Plaintiffs' seek summary judgment on this question, the Court grants Plaintiffs' motion.

     Defendant argues that the pre-shift briefing time was not fixed or regular because "the

amount of time by which Plaintiffs allegedly arrived early . . . varied (from merely a few minutes

to 20 minutes)" based upon personal preference.   Defendant also contends that the briefing period

28

was not fixed or regular because the amount of time spent on briefing, and the consequent amount of time any compensable work was performed, varied.   The Court is not persuaded by these arguments.   The City itself specifically has defined the duration of the briefing period as five minutes and, for purposes of deciding whether the *de minimis* defense applies, the Court assumes that the City also has required its officers to be at work during those five minutes.   The fact that some Plaintiffs may have arrived prior to that briefing time does not alter the City's definition of its employees' scheduled working hours.   *See supra* pp. 18-21.   Likewise, an employee's unilateral decision to have a social conversation during a briefing period cannot alter an employer's fixed and regular schedule of working hours for its employees.

Defendant also argues that under *Lindow v. United States* the Court must weigh four factors to determine whether the five-minute briefing period time was *de minimis* and therefore not compensable:   (1) the amount of daily time spent on the additional work; (2) the administrative difficulty in recording the time; (3) the size of the aggregate claim; and (4) the regularity of the work.   *See Smith v. Aztec Well Servicing Co.*, 321 F. Supp. 2d 1234, 1238 (D.N.M. 2004) (citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).   The *Lindow* factors, however, apply only to hours that are not part of the employee's scheduled working hours and are not part of the employee's fixed or regular working time.   *See Lindow*, 738 F.2d at 1060, 1062 (evaluating whether preliminary hours an employer did not require, pressure, or encourage plaintiffs to work, but which plaintiffs alleged the employer "suffered" or "permitted" plaintiffs to work, were *de minimis*); *see also Anderson*, 328 U.S. at 692-93; 29 C.F.R. § 785.47.

Although analysis under *Lindow* is not required, the Court nonetheless notes that it is not persuaded by Defendant's arguments against finding the briefing period *de minimis* under *Lindow*. With respect to the first factor, Defendant argues that most courts have found daily periods of ten

minutes *de minimis*.   The Tenth Circuit, however, has never adopted a bright-line, ten-minute

rule.   *See McDonald v. Kellogg Co.*, No. 08–2473–JWL, 2011 WL 6180499 (D. Kan. Dec. 13,

2011).   With respect to the second factor, Defendant argues that Plaintiffs' arrival and briefing

times varied, "making it extremely administratively burdensome to record."   The Court already

has explained that the City itself, through its SOP and its supervisors' enforcement of the early

arrival requirement, defined the duration of the required briefing period as five minutes, rendering

the period fixed and regular and part of the scheduled working hours.   Thus, the time at issue is

not varied and there is no administrative difficulty in recording it.   With respect to the fourth

requirement, the pre-shift briefing period was a required regular occurrence during each daily

shift.   *Cf. Smith v. Cleveland Pneumatic Tool, Co.*, 173 F.2d 775, 776 (6th Cir. 1949 (unpaid

working time is *de minimis* where "not a daily occurrence"), *cited in Lindow*, 738 F.2d at 1063.

On balance, then, although the Court cannot say that the claim in the aggregate is sizeable pursuant

to the third factor because a question of fact remains as to the City's potential liability, if any, the

Court nonetheless concludes that the claim is not *de minimis* within the meaning of *Lindow*.

     D.    <u>Statute of Limitations and Liquidated Damages</u>

Plaintiffs argue that the City's failure to compensate them for arriving five minutes prior to

their shift was a willful violation of the FLSA subjecting Defendant to a three-year statute of

limitations.   Plaintiffs also argue that they are entitled to liquidated damages.   Defendant

disagrees, instead seeking summary judgment in its favor on the ground that it acted in good faith.

Ordinarily, a two-year statute of limitations applies to violations of the FLSA.   If the

employer acted willfully, however, a three-year limitations period applies.   *See* 29 U.S.C. §

255(a) ("a cause of action arising out of a willful violation may be commenced within three years

after the cause of action accrued").   Willfulness may be found only where the "employer either

knew or showed reckless disregard for the matter of whether its conduct violated the statute."

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).   Reckless disregard is shown

through an "unjustifiably high risk of harm that is either known or so obvious that it should be

known."   *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 68 (2007), *cited in Mumby v. Pure Energy Servs.*

*(USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011).

The FLSA further provides that an employer who violates the Act by failing to pay

compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as

liquidated damages."   29 U.S.C. § 216(b).   These liquidated damages are included to address

"'the reality that the retention of a workman's pay may well result in damages too obscure and

difficult of proof for estimate other than by liquidated damages.'"   *Mumby*, 636 F.3d at 1272

(quoting *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991)).   If, however, an

employer had a good faith belief that its actions did not violate the FLSA, the court may in its

discretion decline to award liquidated damages.   *See* 29 U.S.C. § 260; *see also Dep't of Labor v.*

*City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).

In support of its argument that it acted in good faith, which is relevant both to whether a

three-year statute of limitations applies and to whether the Court may decline to award liquidated

damages, *see* 29 U.S.C. §§ 255(a), 260, Defendant contends that the SOP recommending a

five-minute early arrival was not enforced, that no punishment was meted out for failure to arrive

five minutes early, that Plaintiffs did not always perform compensable work during the briefing

period, and that the City did not have notice that Plaintiffs or other security officers had reported

early because the officers failed to record the alleged time worked, never asked to be compensated,

and never filed a grievance.   The Court already has considered these arguments and has held that

a question of fact exists with respect to whether Defendant enforced the SOP, mandated a

five-minute early arrival, and had actual or constructive knowledge that its supervisors were

enforcing the SOP.   Likewise, a question of fact also exists as to whether Defendant acted in good

faith.   Furthermore, the Court notes that a ruling as a matter of law on the question of liquidated

damages is premature because there has been no determination of underlying FLSA liability

against the City.   *See Rodriguez v. City of Albuquerque*, Nos. 10–2041, 10–2042, 2011 WL

1422832, at *2 (10th Cir. Apr. 14, 2011).   For all of these reasons, the Court is precluded from

deciding as a matter of law whether the City acted in good faith or whether a three-year statute of

limitations applies and liquidated damages should be awarded.

II.   <u>New Mexico Minimum Wage Act</u>

Plaintiffs argue that they are entitled to judgment as a matter of law on the question of

overtime wages under the New Mexico Minimum Wage Act.   The Act provides, "An employee

shall not be required to work more than forty hours in any week of seven days, unless the employee

is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in

excess of forty hours.   *See* N.M. Stat. Ann. § 50-4-22(D).   Defendant correctly points out,

however, and Plaintiffs subsequently have conceded, that the overtime provisions in the New

Mexico statute do not apply to public employers such as the City.   *See id.* §§ 50-4-21(B) & (C)(3),

50-4-22(A).   Accordingly, Plaintiffs' Motion for Summary Judgment on the question of overtime

wages under the New Mexico Act is denied, and Defendant's Motion for Summary Judgment on

Plaintiffs' state law overtime claim is granted.[6]

---

[6]   In their summary judgment reply brief, Plaintiffs first raise the argument that the New Mexico
Minimum Wage Act requires straight-time payment to Plaintiffs for the five minutes that they
were required to report to work early.   *See* N.M. Stat. Ann. § 50-4-2(b).   Plaintiffs' opening
summary judgment brief, however, is premised only on a theory of overtime liability.   The
opening brief does not argue that defendant violated the FLSA by failing to pay straight time, and
there is nothing in the opening brief that would put Defendant on notice that Plaintiffs are moving

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Plaintiffs' Motion for

Partial Summary Judgment [Doc. 63] is denied as moot.

**IT FURTHER IS ORDERD** that Defendant's Motion for Summary Judgment and

Memorandum in Support Thereof [Doc. 64] is granted in part and denied in part as follows:

(1)     Defendant's Motion for Summary Judgment with respect to whether it has any FLSA liability for unpaid overtime wages based upon a five-minute early reporting requirement after September 1, 2011, is **GRANTED**; Defendant's Motion for Summary Judgment with respect to whether it has any FLSA liability for unpaid overtime wages based upon a five-minute early reporting requirement prior to September 1, 2011, is **DENIED**;

(2)     Defendant's Motion for Summary Judgment on the question whether an offset for bona fide meal periods precludes FLSA liability is **DENIED**;

(3)     Defendant's Motion for Summary Judgment on the question whether the *de minimis* defense precludes FLSA liability is **DENIED**;

(4)     Defendant's Motion for Summary Judgment with respect to whether a three-year statute of limitations applies and whether liquidated damages should be awarded under the FLSA is **DENIED**; and

(5)     Defendant's Motion for Summary Judgment on their overtime claims pursuant to the New Mexico Minimum Wage Act is **GRANTED**.

In addition, **IT HEREBY IS ORDERED** that Plaintiffs' Motion for Partial Summary

Judgment [Doc. 67] is granted in part and denied in part as follows:

(1)     Plaintiffs' Motion for Summary Judgment with respect to whether Defendant has any FLSA liability for unpaid overtime wages based upon a five-minute early reporting requirement is **DENIED**;

(2)     Plaintiffs' Motion for Summary Judgment on the question whether an offset for bona fide meal periods precludes FLSA liability is **DENIED**;

---

for summary judgment based on a failure to pay straight-time.   The Court declines to consider an argument raised for the first time in a reply.   *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived").

(3)     Plaintiffs' Motion for Summary Judgment on the question whether the *de minimis* defense precludes FLSA liability is **GRANTED**;

(4)     Plaintiffs' Motion for Summary Judgment with respect to whether a three-year statute of limitations applies and whether liquidated damages should be awarded under the FLSA is **DENIED**; and

(5)     Plaintiffs' Motion for Summary Judgment on their overtime claims pursuant to the New Mexico Minimum Wage Act is **DENIED**.

Dated this 27th day of September, 2012.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE